IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 1, 2023

**NEDRA R. HASTINGS v. LARRY M. HASTINGS**

**Appeal from the Juvenile Court of Memphis and Shelby County**
**No. R2487                    Terre Fratesi, Magistrate**

---

**No. W2022-00433-COA-R3-JV**

---

This case arises from a protracted and contentious child support action, which began in 2005 with a petition for child support filed on behalf of the mother seeking child support assistance from the father for care of the parties' minor son. Over the years, the parties filed numerous petitions to modify the child support amount, petitions for contempt for failure to pay medical and other expenses, petitions for changes in visitation with the child, objections to the appointment of magistrates by the juvenile court judge, and requests to rehear many of the motions and petitions. All pending matters were ultimately dismissed for failure to prosecute in an order entered December 1, 2020.[1] This appeal arises from two petitions filed by the mother after the dismissal for failure to prosecute. The first was a petition for contempt against the father for failure to pay medical and dental expenses for the child and failure to pay the full child support amount, and the second was a petition seeking payment of extraordinary expenses for the child related to his senior year of high school and an extension of the father's child support obligations until the child reached the age of twenty-one. Upon thorough review of the record and consideration of the issues raised by the mother on appeal, we affirm the decisions of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ARNOLD B. GOLDIN, J., joined.

Nedra R. Hastings, Memphis, Tennessee, Pro Se.

**OPINION**

I. Factual and Procedural Background

---

[1] A full recitation of the underlying facts can be found in this Court's opinion concerning the related appeal, *Nedra R. Hastings v. Larry M. Hastings*, No. W2020-01665-COA-R3-JV.

This matter began nearly twenty years ago with a petition for child support filed by the State of Tennessee on behalf of the appellant mother, Nedra R. Hastings ("Mother"), on April 15, 2005, in the Juvenile Court of Memphis and Shelby County ("trial court"), seeking support from the appellee father, Larry Maurice Hastings ("Father"), for their son, N. H. (the "Child"), who was born in 2004. Mother sought child support enforcement assistance pursuant to Title IV-D of the Social Security Act, codified at 42 U.S.C. § 651, *et seq.* ("Title IV-D"). On July 29, 2005, the trial court entered an order directing Father to pay child support in the amount of $465.00 per month beginning on August 1, 2005, with a retroactive child support amount owed totaling $438.00. The trial court further ordered Father to provide medical insurance for the Child, with each party responsible for 50% of medical expenses not covered by insurance. Spanning the next eighteen years, the parties filed many motions and petitions related to this matter, and the trial court issued numerous respective orders addressing the parties' filings. Ultimately, the trial court dismissed the case for failure to prosecute on December 1, 2020, and denied Mother's motions to alter or amend and for hearing before the judge on May 4, 2021. On appeal, we have affirmed the decision of the trial court to dismiss the action. *See Nedra R. Hastings v. Larry M. Hastings,* No. W2020-01665-COA-R3-JV.

In this appeal, Mother raises several issues arising from two orders entered by the trial court on March 18, 2022, addressing two petitions Mother filed following the May 4, 2020 hearing. On May 7, 2021, Mother filed a *pro se* "Petition for Contempt for Failure to Pay Medical/Dental Expenses & Child Support January 1, 2020 – Present." In this petition, Mother sought reimbursement from Father for medical and dental expenses he had failed to pay, payment from Father for child support arrearages totaling $660.68, and a finding that Father was in "willful contempt" of court for his failure to pay these arrearages and medical expenses. On July 1, 2021, Mother filed a *pro se* "Petition to Modify Child Support for Extraordinary Expenses & Deviations; and Petition to Extend Child Support to Age 21." In this second petition, Mother sought reimbursement from Father for expenses related to the Child's senior year of high school and posited that Father's child support obligation should be extended until the Child reached age twenty-one because the Child had been "determined to be disabled from the age of 5 years old, as defined by Americans with Disabilities Act and TN Dept of Education[.]"

On March 3, 2022, the trial court, with Magistrate Terre Fratesi presiding, conducted a hearing concerning both petitions. Father was not present for the hearing. After Mother presented proof of Father's unpaid child support and unpaid medical and dental expenses for the Child, the trial court ordered Father to pay child support arrearages totaling $550.38 and an unpaid medical and dental expense arrearage of $212.37. The court's ruling was memorialized by a written order entered on March 18, 2022. Also, during the March 3, 2022 hearing, Mother presented proof of "extraordinary" expenses related to the Child's senior year of high school, as well as records related to the Child's mental and physical health in support of her July 1, 2021 petition to extend child support

2

until the Child reached the age of twenty-one. The trial court entered a separate order addressing that petition, determining that Mother had presented proof of "extraordinary expenses related to the child's senior year of high school" in the amount of $785.00. The trial court determined that Father was responsible for half of these expenses and ordered Father to pay $392.50 to cover his portion. However, the trial court denied Mother's petition to extend child support until the Child attained the age of twenty-one. In so ruling, the trial court found that Mother had not met her "burden of proof required by T.C.A. 36-5-101[(k)(1)] or T.C.A. 36-5-101[(k)(2)]."[2] The trial court further determined that the "Child was not disabled within the meaning of the Americans with Disabilities Act[, 42 U.S.C. § 12101, *et seq.* ("ADA"),] Tennessee statute, or case law." On the contrary, the trial court found that the Child's medical and educational records supported the opposite conclusion.

Mother filed a notice of appeal with this Court on April 4, 2022. On June 24, 2022, this Court received an affidavit from the trial court clerk stating that as of that date, Mother had not filed either a Tennessee Rule of Appellate Procedure 24(d) notice or any transcript or statement of the evidence after filing the notice of appeal. Upon receiving such affidavit from the trial court, this Court entered an administrative order reciting that Mother had failed to comply with Tennessee Rule of Appellate Procedure 24(b), (c), or (d).[3] The administrative order instructed Mother to either file with the trial court clerk a transcript of the evidence, a statement of the evidence, or a Rule 24(d) notice, or otherwise show cause why this appeal should not be dismissed, within fifteen days of the order.

On July 12, 2022, Mother filed a response to this Court's administrative order, stating, *inter alia*, that she had "prepared statements of evidence and transcripts of evidence based on the substantially verbatim recital of the testimony and evidence submitted [and] entered on the record" and had filed those statements with the trial court clerk's office "by depositing in the clerk's filing box on June 13, 2022." On August 29, 2022, Mother filed a "status update" with this Court explaining that she had "submitted a second delivery of the protected transcripts/statements" via "FedEx courier to [Magistrate Fratesi] on [July 28, 2022]," that the trial court clerk had acknowledged receipt of these materials, and that the clerk had informed her that the records she had sent would "not be reviewed by Magistrate Fratesi until properly filed." (Emphasis and additional quotation marks omitted.) On September 7, 2022, this Court received a second affidavit from the trial court

---

[2] The trial court referred to "T.C.A. 36-5-101(p)(1) or T.C.A. 36-5-101(p)(2)" in the order. Effective July 1, 2005, Tennessee Code Annotated § 36-5-101 was amended and rewritten. The relevant subsections, which had formerly been designated subsection (p) are now found in subsection (k), but the language of the subsection remains the same. *See Shaw v. Shaw*, No. W2010-02369-COA-R3-CV, 2011 WL 4379052, at *3 n.1 (Tenn. Ct. App. Sept. 21, 2011).

[3] Rule 24(b) and (c) require an appellant to file a transcript or statement of the evidence within sixty days after the notice of appeal is filed. If no transcript or statement of the evidence is to be filed, the appellant must file a notice that neither will be filed pursuant to Rule 24(d).

3

clerk stating that the trial court clerk's office had not received from Mother any Tennessee Rule of Appellate Procedure 24(d) notice, transcript, or statement of the evidence.

On September 8, 2022, this Court issued an order relaying the above sequence of events and stating that this Court had received "conflicting information from [Mother] and the trial court clerk regarding whether [Mother] has filed a statement of the evidence or otherwise complied with Rule 24." In the order, this Court directed the trial court clerk to file a response addressing the aforementioned discrepancies. On September 16, 2022, the trial court clerk responded, stating that Mother was not in compliance with Tennessee Rule of Appellate Procedure 24 because she had not filed either a transcript or a statement of the evidence as the rule required. The trial court clerk explained that Mother had delivered a package directly to Magistrate Fratesi, who had then forwarded it to the clerk's office with instructions for the trial court clerk to inform Mother that Magistrate Fratesi would not review the contents because they had not yet been filed with the trial court. The trial court clerk further indicated that the clerk's office had complied with Magistrate Fratesi's request in contacting Mother but that Mother had failed to retrieve the package or file any documents with the trial court clerk.

On October 5, 2022, no appellate record had yet been filed, and this Court accordingly entered an order stating:

> It appears to this Court that [Mother's] position that she has submitted a transcript to the trial court clerk is based (at least partially) on her sending a "transcript" to the trial court judge's personal office. The judge appropriately directed that the documents be sent to the trial court clerk's office to be returned to [Mother] in order for her to properly file them with the trial court clerk. [Mother] appears to assume that the clerk's office had an obligation at that point to file the transcripts for her. The trial court clerk's office had no such obligation or authority to do so. To be clear, [Mother] is the party required to file and serve the transcript: "The transcript, certified by the appellant . . . shall be filed with the clerk of the trial court within 60 days after filing the notice of appeal. Upon filing the transcript, the appellant shall simultaneously serve notice of the filing on the appellee." Tenn. R. App. P. 24(b).

This Court then ordered Mother to file a "transcript, a statement of the evidence, or a notice of no transcript or statement within ten (10) days [of October 5, 2022]." On December 8, 2022, the trial court clerk's office filed an amended response to this Court's request concerning the status of the appellate record and reported that Mother had filed a copy of the transcript of the relevant proceedings on September 20, 2022. Accordingly, this Court directed the trial court clerk to transmit a certified copy of the appellate record to the clerk of this Court on or before December 28, 2022, and stated that thereafter, "briefing in this

4

case shall proceed as set forth in Rule 29 of the Tennessee Rules of Appellate Procedure." The appellate record was filed with the clerk of this Court on January 24, 2023.

On February 9, 2023, Mother filed a "Motion to Supplement Record; and Stay or Extension of Briefing Schedule" requesting that this Court (1) order the trial court to certify and transmit a "supplemental record of electronic recording 'transcript' of court hearing on March 3, 2022"; (2) grant permission for Mother to "submit a supplemental record of complete transcript of evidence (99 pages) filed with trial court clerk on September 20, 2022"; and (3) grant a stay and extension of the briefing schedule while the motion remained pending. In the motion, Mother explained that "64 pages of 99 pages" of the transcript of evidence from the final hearing held on March 3, 2022 were "missing/omitted" from the record. On March 3, 2023, this Court entered an order denying Mother's motion to supplement the appellate record, noting that this Court had adjudicated multiple matters regarding the appellate record in this case and that the certified appellate record had been received and subsequently filed in this Court on January 24, 2022. Mother filed her appellate brief on May 2, 2023. Father has not filed a brief or otherwise appeared in this appeal.

## II. Issues Presented

Mother raises several issues on appeal, which we have reordered and restated as follows:

1. Whether this Court abused its discretion when it denied Mother's motion to supplement the record with a complete transcript of evidence of the final hearing in this matter.

2. Whether the orders signed by the Magistrate comply with Tennessee Code Annotated §§ 36-5-405, *et seq*.

3. Whether the trial court abused its discretion in denying Mother's petition seeking an extension of child support until the Child reached twenty-one years of age.

4. Whether the trial court abused its discretion in declining to modify the presumptive child support obligation to cover its awards to Mother for extraordinary expenses, out-of-pocket medical and dental expenses, child support arrearages, and insurance premiums owed by Father.

5. Whether the trial court abused its discretion when it declined to impute the noncustodial parent, to modify basic child support, and to issue an updated Income Assignment Order to Father's employer to

ensure collection of judgments in accordance with the Tennessee Child Support Guidelines.

6. Whether the trial court erred when it cited Tennessee Code Annotated § 37-1-107(d) for a rehearing of child support actions governed under Title 36, Chapter 5 of Tennessee Code Annotated.

## III. Standard of Review

We review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). We review questions of law *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006).

We apply the deferential abuse of discretion standard to determinations regarding child support. *See Mayfield v. Mayfield*, 395 S.W.3d 108, 114-15 (Tenn. 2012); *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). As the *Richardson* Court explained:

Because child support decisions retain an element of discretion, we review them using the deferential "abuse of discretion" standard. This standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999). Appellate courts do not have the latitude to substitute their discretion for that of the trial court. *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). Thus, a trial court's discretionary decision will be upheld as long as it is not clearly unreasonable. *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001).

*Id.* at 725.

Regarding *pro se* litigants, this Court has explained:

Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial

system.  However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary.  Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

The courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs.  Accordingly, we measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers.

Pro se litigants should not be permitted to shift the burden of the litigation to the courts or to their adversaries.  They are, however, entitled to at least the same liberality of construction of their pleadings that Tenn. R. Civ. P. 7, 8.05, and 8.06 provide to other litigants.  Even though the courts cannot create claims or defenses for pro se litigants where none exist, they should give effect to the substance, rather than the form or terminology, of a pro se litigant's papers.

*Young v. Barrow*, 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2003) (internal citations omitted).

IV.  Denial of Motion to Supplement the Appellate Record

Mother asserts that this Court abused its discretion when it entered a *per curiam* order, dated March 3, 2023, denying her February 9, 2022 motion to supplement the record with a complete transcript of evidence of the final hearing in this matter.  Mother contends that the transcript at issue, designated as Volume 6 of the record on appeal, is missing sixty-four pages.  Mother requested that this Court permit her to submit a supplemental record of "complete transcript of evidence (99 pages) filed with the trial court clerk on September 20, 2022."  In her appellate brief, Mother posits that this Court's order denying her request "appears to admonish [Mother]" for this Court's having to settle contentions between Mother and the trial court clerk.  Mother asserts that this Court's perceived admonishment was "misdirected" and appeared to be "an unjust sanction" against her.  Mother further contends that the order "indicates an indifference or lack of objective consideration to [Mother's] efforts to adhere to the standards and procedures of having the record prepared[,]" and "indicates an appearance of . . . partiality, and/or a predetermination of the issues to be reviewed by this Court."  Mother further asserts that the "trial judge should have noticed the incomplete sentences and/or notations on page thirty-five (35) of the clerk's unnumbered, transmitted transcript of evidence for a final hearing that was almost four (4) hours in duration."

Concerning the content of the record on appeal, Tennessee Rule of Appellate Procedure 24 provides in relevant part:

7

(a)     Content of the Record.  The record on appeal shall consist of:  (1) copies, certified by the clerk of the trial court, of all papers filed in the trial court except as hereafter provided; (2) the original of any exhibits filed in the trial court; (3) the transcript or statement of the evidence or proceedings, which shall clearly indicate and identify any exhibits offered in evidence and whether received or rejected; (4) any requests for instructions submitted to the trial judge for consideration, whether expressly acted upon or not; and (5) any other matter designated by a party and properly includable in the record as provided in subdivision (g) of this rule.

\* \* \*

(b)     Transcript of Stenographic or Other Substantially Verbatim Recording of Evidence or Proceedings.   Except as provided in subdivision (c), if a stenographic report or other contemporaneously recorded, substantially verbatim recital of the evidence or proceedings is available, the appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal . . . .  The transcript, certified by the appellant, the appellant's counsel, or the reporter as an accurate account of the proceedings, shall be filed with the clerk of the trial court within 60 days after filing the notice of appeal[.]

(Emphasis added.)  With regard to correction and modification of an appellate record, Rule 24 provides:

(e)      Correction or Modification of the Record.  If any matter properly includable is omitted from the record, is improperly included, or is misstated therein, the record may be corrected or modified to conform to the truth.  Any differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court.   Absent extraordinary circumstances, the determination of the trial court is conclusive.  If necessary, the appellate or trial court may direct that a supplemental record be certified and transmitted.

Here, Mother submitted and certified the transcript of the March 3, 2022 hearing to the trial court clerk on September 20, 2022, and that certified transcript included thirty-five pages.  Mother wrote by hand and initialed on the front cover of the transcript: "35 pages

8

total NRH." On the last page of the transcript, the upper right-hand corner of which bears the number, "35," Mother signed an affidavit certifying that exact copies of the transcript had been previously submitted by Mother to the trial court clerk on June 13, 2022 and July 18, 2022, to Father on June 13, 2022; and to Magistrate Fratesi on July 18, 2022. Nowhere on the transcript that Mother signed did she indicate that certain pages of the transcript were missing. Instead, Mother noted with her initials on the first page that the transcript contained exactly "35 pages total." The trial court then certified the transcript along with the other documents to be included in the record, all of which were filed with this Court on January 24, 2022.

The appellant bears the responsibility to ensure that an accurate and complete transcript of relevant proceedings before the trial court is included in the record on appeal. *See* Tenn. R. App. P. 24 (b) ("The appellant shall have prepared a transcript of such part of the evidence or proceeding as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal."); *Jennings v. Sewell-Allen Piggly Wiggly*, 173 S.W.3d 710, 713 (Tenn. 2005) ("An appellant is responsible for preparing the record and providing to the appellate court a 'fair, accurate and complete account' of what transpired at the trial level." (quoting *State v. Ballard,* 855 S.W.3d 557, 560 (Tenn. 1993))). In her brief on appeal, Mother acknowledges this burden. This Court afforded Mother ample extensions of time to properly file the transcript of the hearing held on March 3, 2022 as well as other documents and exhibits with the trial court, even after the deadline for filing the record on appeal had passed. Once Mother filed the hearing transcript with the trial court, the trial court duly certified and submitted the transcript to this Court. There is nothing in the record to suggest that the trial court submitted anything other than the exact transcript Mother filed on September 20, 2022.

We recognize that Mother is a *pro se* litigant who is entitled to fair and equal treatment by the courts and to whom we must give a certain amount of leeway in drafting her pleadings and briefs. *See Young*, 130 S.W.3d at 62-63. However, we are also cognizant that Mother must comply with the "same substantive and procedural rules that represented parties are expected to observe." *See id.* at 63. As stated above, Mother was afforded numerous opportunities and extensions of deadlines in order to properly file a complete and accurate record with the trial court to be transmitted to this Court for our review. The trial court submitted to this Court an exact copy of the transcript filed by Mother. Mother, as the appellant, was aware of her duty to provide a complete transcript as part of the record and certified with the trial court that she had done so. She cannot now complain that the record is not accurate. Accordingly, we find that this Court did not abuse its discretion when it entered the March 3, 2023 order denying Mother's motion to supplement the record.[4] We further ascribe no error to the trial court related to the contents of the record on appeal.

---

[4] Regarding this Court's ability to review a *per curiam* order, Tennessee Rule of Appellate Procedure 22(d) provides:

V. Finality of the Magistrate's Orders

Mother argues that Magistrate Fratesi, who presided over the March 3, 2022 hearing at issue, "did not adjudicate the support/contempt petitions as an appointed 'special judge.' Therefore, the findings and recommendations for dispositive issues in this case should have been reviewed and confirmed by the Juvenile Court Judge, pursuant to [Tennessee Code Annotated] § 36-5-405(g)(i) and the Child Support Guidelines." We disagree.

Mother invokes Tennessee Code Annotated § 36-5-405 (2021), which addresses the authority of magistrate judges in child support matters. Regarding the finality of magistrates' decisions, that statute provides:

> (g) Upon the conclusion of the hearing in each case, the magistrate shall transmit to the judge all papers relating to the case, along with the magistrate's findings and recommendations in writing. A magistrate's decision on a preliminary matter, not dispositive of the ultimate issue in the case, shall be final and not reviewable by the judge.
>
> * * *
>
> (i) If a hearing before the judge is not requested, the findings and recommendations of the magistrate become the final decree of the court when confirmed by an order of the judge.

However, because the trial court in this matter is the Juvenile Court for Memphis and Shelby County, Tennessee Code Annotated § 37-1-107 (2019) is the relevant statute governing the authority and finality Magistrate Fratesi's decisions in this matter. Tennessee Code Annotated § 37-1-107 provides in pertinent part:

> (b) The judge may direct that any case or class of cases over which the juvenile court has jurisdiction shall be heard in the first instance by the magistrate. These cases shall be conducted in the same manner as cases heard by the judge. In the conduct of the proceedings, the magistrate shall have the powers of a judge and shall have the same authority as the judge to issue any and all process.

Power of Single Judge to Entertain Motions. A single judge of the appellate court may entertain and may grant or deny any request for relief that under these rules may be sought by motion, except that a single judge may not dismiss or otherwise finally dispose of an appeal or other proceeding. The action of a single judge may be reviewed by the court.

(c)     Upon conclusion of the hearing, the magistrate shall file an order. The magistrate shall also inform each party of the right to a hearing before the juvenile court judge, the time limits within which a request for a hearing must be perfected, and of the manner in which to perfect the request.

\* \* \*

(e)     If no hearing before the judge is requested, or if the right to the hearing is expressly waived by all parties within the specified time period, <u>the magistrate's order becomes the order of the court.</u>  A party may appeal the order pursuant to § 37-1-159.

(Emphasis added.)  Thus, according to the applicable statute, unlike a magistrate's order governed by Tennessee Code Annotated § 36-5-405, a juvenile court magistrate's order does not require confirmation of the juvenile court judge.  Here, Magistrate Fratesi heard Mother's pending motions on March 3, 2022, and entered two orders on March 18, 2022.  Neither party requested a hearing before the juvenile court judge.  Therefore, Magistrate Fratesi's order became the order of the court pursuant to Tennessee Code Annotated § 37-1-107(e).

## VI.  Extension of Child Support to Age Twenty-One

Mother contends that Magistrate Fratesi's findings related to her petition to extend Father's child support obligations until the Child reaches the age of twenty-one were "nothing more than a general summary of denial[]" and therefore did not comport with the requirements of Tennessee Rule of Civil Procedure 52.  Regarding Mother's petition, the trial court found:

> [Mother] did not meet the burden of proof required by [Tennessee Code Annotated §] 36-5-101[(k)(1) and (k)(2)].  The [C]hild is not disabled within the meaning of the Americans with Disabilities Act or Tennessee statute or case law.  In fact, the Court finds the [C]hild's medical and educational records presented by [Mother] support the court's finding on this issue.

Tennessee Rule of Civil Procedure 52.01 provides:

> In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment.

Regarding the requirements set forth in Rule 52.01, this Court has explained:

11

Generally, when a trial court fails to explain the factual basis for its decision in accordance with Rule 52.01 of the Tennessee Rules of Civil Procedure, the appropriate remedy is to "vacate the trial court's judgment and remand the cause to the trial court for written findings of fact and conclusions of law." *Manning v. Manning*, 474 S.W.3d 252, 260 (Tenn. Ct. App. 2015) (quoting *Lake v. Haynes*, No. W2010-00294-COA-R3-CV, 2011 WL 2361563, at *1 (Tenn. Ct. App. June 9, 2011)). Nevertheless, "[w]hen the trial court fails to explain the factual basis for its decisions, we may conduct a de novo review of the record to determine where the preponderance of the evidence lies[.]" *Gooding v. Gooding*, 477 S.W.3d 774, 783 (Tenn. Ct. App. 2015) (citing *Lovlace v. Copley*, 418 S.W.3d 1, 36 (Tenn. 2013); *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997); *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005)). Furthermore, "[c]ourts need not make findings on stipulated or undisputed facts, unless conflicting inferences can be drawn from undisputed facts." *Lovlace*, 418 S.W.3d at 35.

*Lillard v. Lillard*, No. M2019-02305-COA-R3-CV, 2021 WL 861769, at *6 (Tenn. Ct. App. Mar. 8, 2021).

In cases concerning issues arising from Tennessee Code Annotated § 36-5-101(k), wherein the trial court has not made specific findings of fact, this Court has conducted a *de novo* review of the trial court's determinations. *See, e.g., Finn v. Bundy*, M2003-01368-COA-R3-CV, 2005 WL 418793 at *2 (Tenn. Ct. App. Feb. 22, 2005) ("Because the trial court did not make specific findings of fact about the son's [disabled status], we review the facts in the record under a purely *de novo* review.") (citing *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002)). Accordingly, we now conduct a *de novo* review upon the record of the trial court's denial of Mother's request to extend child support until the age of twenty-one.

Tennessee Code Annotated § 36-5-101(k) (2021), the statutory provision governing whether child support may be extended past the age of majority, provides:

(1) Except as provided in subdivision (k)(2), the court may continue child support beyond a child's minority for the benefit of a child who is handicapped or disabled, as defined by the [ADA], until such child reaches twenty-one (21) years of age.

The ADA defines a disability as follows:

The term "disability" means, with respect to an individual—

(A) a physical or mental impairment that substantially limits

12

one or more major life activities of such individual;

    (B)    a record of such an impairment; or

    (C)    being regarded as having such an impairment[.]

42 U.S.C. § 12102 (2009). A "major life activity" is defined by the ADA as follows:

    (A)    In general
           For purposes of [the definition of disability], major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

    (B)    Major bodily functions
           For purposes of [the definition of disability], a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

*Id.*

Upon our review of the exhibits filed by Mother on appeal, we determine that the evidence preponderates in favor of the trial court's finding that the Child is not a person with a disability as defined by the ADA and is therefore not eligible for extended child support pursuant to Tennessee Code Annotated § 36-5-101(k)(1). In support of her petition to extend child support until the Child reaches the age of twenty-one, Mother presented to the trial court, during the March 3, 2022 hearing, several evaluations of the Child's physical, mental, and psychological health from age ten through seventeen. These were conducted and/or considered by the "Exceptional Children and Health Services" of Memphis in determining the Child's eligibility for services pursuant to the Individuals with Disabilities in Education Act ("IDEA"). These included an "Initial Evaluation" conducted on December 12, 2014; an "Outside Psychological Evaluation" conducted on February 6, 2020; and a "Reevaluation" and updated "Individual Education Plan" ("IEP") conducted on August 24, 2021.

The Initial Evaluation was conducted when the Child was in fifth grade to determine his eligibility for the Shelby County Schools' gifted program. The Child was assessed using the Reynolds Intellectual Assessment Scale ("RIAS") and was determined to possess an intellectual ability that the evaluators deemed to be "in the Superior range compared to

his same age peers." The Outside Psychological Evaluation, conducted when the Child was fifteen years old, showed the Child's academic performance "indicated generally age-appropriate skills" and abilities in reading, sentence comprehension, and math, with some difficulty in concentrating and staying on task at school. Recommendations stemming from that evaluation indicated that the Child should be allowed additional time to complete any "in-school" reading or writing assignments, should eat healthy foods, get enough sleep, exercise more, and attempt to make friends.

The Reevaluation, conducted when the Child was in twelfth grade, contained similar findings and also noted that the Child had a "severed tendon" in his left hand, the hand he used for writing. The evaluation showed that the Child had proficient language skills, no visual or hearing impairment, no cognitive processing deficits, no reading or math skill deficits, and no communication problems. The IEP associated with the twelfth-grade evaluation indicated that the Child was enrolled in and passed several honors courses in his senior year and that he had received academic accommodations for these classes that allowed him to take more time to complete homework and tests and the ability to retake tests if needed. The IEP stated that the Child struggled with participating in school activities and focusing on school work. Nevertheless, the IEP included plans for the Child to seek independent living after graduating from high school, to take his driver's license test, and to attend a four-year university. The record demonstrates that the Child did apply for a driver's license on July 15, 2021, and took the American College Testing ("ACT") exam in October 2021.

After a thorough review of the record, we determine that a preponderance of the evidence supports the trial court's finding that the Child is not disabled as defined by the ADA. Although the Child received certain diagnoses resulting in accommodations for test-taking and completing school work, nothing in the record demonstrates the existence of any condition that would limit the Child's major life activities. On the contrary, the record demonstrates that the Child has been able to function at normal or high cognitive functioning levels for his age group and grade levels with minor accommodations. The Child received special consideration in school as a "gifted" student due to his high intelligence quotient ("IQ"), was enrolled in honors classes as a senior in high school, and achieved ACT scores sufficient for him to enroll in a four-year university. Furthermore, there are no indications that the Child suffers from any physical disability that would limit any major life activity. Accordingly, we affirm the trial court's denial of Mother's petition to extend child support to twenty-one years of age pursuant to Tennessee Code Annotated § 36-5-101(k)(1).

VI. Modification of Child Support Obligation to Cover Arrearages and Expenses

Mother posits that the trial court's order concerning her petition for contempt failed to comport with Tennessee Rule of Civil Procedure 52.01 because it did not include "any of the subsidiary details, testimony or proof admitted into evidence" and that the rulings

"merely stated [Father's] new arrearages, with interest payments, 'if not paid by March 30, 2022.'" Significantly, Mother does not disagree with or appeal the amounts awarded or proffer any alternative amounts in her appellate brief. Instead, Mother complains that the trial court's order "does not provide a connection of which proof/evidence was relied upon by the Magistrate for the calculations of child support arrears and medical arrears."

As stated above, Rule 52.01 provides that "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law[.]" In the trial court's order titled, "Order on Petition for Contempt for Failure to Pay Medical/Dental Expenses and Child Support January 1, 2020-Present," the trial court included findings of fact regarding various amounts owed by Father and ordered him to pay to Mother these amounts as follows:

> [Mother] presented proof and testimony of Child Support arrears. The Court finds that as of February 7, 2022, the Child Support arrears should be established at $550.38 which is due and owing as of February 28, 2022 and should be paid in full by March 30, 2022 or the amount will incur the statutory interest at a rate of 6%. If not paid in full by March 30, 2022, arrearage should be paid at the rate of $45.87 per month until the amount is paid in full.

> [Mother] presented proof and testimony of medical arrears. The unpaid medical and dental arrears should be reduced to a judgment of $212.37 and should be paid in full by March 30, 2022 or the amount will incur the statutory interest at a rate of 6%. If not paid in full by March 30, 2022, arrearage should be paid at the rate of $65.75 per month until the amount is paid in full.

> IT IS THEREFORE ORDERED

> That the child support arrearages be established at $550.38 as of February 28, 2022. If the amount is not paid by March 30, 2022, [Father] shall pay at the rate of $45.87 per month, and incur statutory interest at 6%.

> That unpaid medical and dental arrears be established at $212.37 as of February 28, 2022. If the amount is not paid by March 30, 2022, [Father] shall pay at the rate of $65.75 per month, and incur statutory interest at 6%.

(Paragraph numbering omitted.) In the second order entered on March 18, 2022, titled "Order on Petition to Modify Child Support for Extraordinary Expenses and Deviations and Petition to Extend Child Support to 21 Years of Age," the trial court included the following findings of fact as relevant to this issue on appeal:

15

> [Mother] presented proof of extraordinary expenses related to the child's senior year of high school. The amount for senior expenses are $785.00. [Father] is responsible for half which is $392.50 to [Mother] by May 3, 2022 or shall pay $138.83 per month until the amount is paid in full. The Court did not include in this figure the amount requesting reimbursement for driving lessons and a class trip to Texas.
>
> * * *
>
> IT IS THEREFORE ORDERED
>
> That the arrears for the minor child's senior expenses be established at $392.50 and [Father] shall pay this amount by May 3, 2022. If the amount is not paid by May 3, 2022, [Father] shall pay $138.83 per month.

After a careful review of the record, we find that both orders provide sufficient findings of fact and conclusions of law to comport with Rule 52.01. In the first order, the trial court established a child support arrearage amount and medical and dental arrearages based on Mother's testimony and the "Custodial Parent Payment Summary" documents introduced as exhibits at the March 3, 2020 hearing. That order further establishes a start date for Father to commence paying each arrearage and the statutory interest that would begin to accrue should Father fail to pay as directed. In the second order, the trial court determined a specific amount of "extraordinary expenses" related to the Child's senior year of high school predicated on Mother's testimony and exhibits entered at the March 3, 2022 hearing. The trial court ordered Father to pay one-half of this amount to Mother. Moreover, the trial court expressly indicated that it was intentionally excluding certain expense payments sought by Mother, such as the requested reimbursement for driving lessons and a class trip.

Again, in her appellate brief respecting the school expenses award, Mother does not object to the amounts awarded; rather, she challenges the manner in which the trial court directed that these amounts would be paid by Father. Mother asserts that the trial court "erred in not modifying the presumptive child support order and issu[ing] a new income-assignment order to ensure collection of the judgments/arrearages." However, we do not find that this objection provides a proper basis to overturn the trial court's discretionary determination with respect to the continuing amount of child support owed by Father in this case. Regarding this Court's review of a child support award, we reiterate:

> Because child support decisions retain an element of discretion, we review them using the deferential "abuse of discretion" standard. This standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App.

16

2000); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999). Appellate courts do not have the latitude to substitute their discretion for that of the trial court. *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). Thus, a trial court's discretionary decision will be upheld as long as it is not clearly unreasonable, *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001), and reasonable minds can disagree about its correctness.

*Richardson*, 189 S.W.3d at 725.

The trial court's decision that Father should pay arrearages and extraordinary costs directly to Mother in lump sums, rather than through a modified child support award and income assignment, was not clearly unreasonable, and we therefore uphold the trial court's decision. For this reason, and because we are able to readily ascertain the trial court's bases for its conclusions, we find no reversible error as to the monetary awards in either of the trial court's March 18, 2022 orders, and we affirm the trial court's determinations on these issues.

## VII. Modification of Basic Child Support

Mother also seeks to modify the "basic child support" award based on an imputation of income to Father. However, Mother did not raise this issue in either petition before the trial court. As this Court has explained:

Generally, issues may not be raised for the first time on appeal. *See, e.g., Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006) ("Issues not raised in the trial court cannot be raised for the first time on appeal."); *Main St. Mkt., LLC v. Weinberg*, 432 S.W.3d 329, 337 n.4 (Tenn. Ct. App. 2013) ("Issues not raised at trial will not be considered for the first time on appeal."). Rather, where a party did not first raise an issue in the trial court, "he has waived his right to argue this issue for the first time on appeal." *In re M.L.P.*, 281 S.W.3d 387, 394 (Tenn. 2009).

*Chimneyhill Condo. Ass'n v. Chow*, No. W2020-00873-COA-R3-CV, 2021 WL 3047166, at *15 (Tenn. Ct. App. July 20, 2021). Accordingly, Mother has waived this issue on appeal because she did not raise it before the trial court.

## VIII. Time for Rehearing

Mother contends that the trial court's reference in its March 18, 2022 orders to Tennessee Code Annotated § 37-1-107(d), which provides the time during which a party may move for a rehearing, was erroneous and confusing because the trial court misstated

the rule. Both orders entered on March 18, 2022, include the following paraphrase of the language from Tennessee Code Annotated § 37-1-107(d):

> [P]ursuant to Tennessee Code Annotated, Section 37-1-107(d): any party may, within five (5) days, excluding non-judicial days, file a request with the court for a hearing (a *rehearing*) by the judge by the juvenile court. The notice and filing for a rehearing may be prepared and filed in room 133.

Mother is correct that the trial court misstated the time for requesting review by the juvenile court judge as provided in the statute. Tennessee Code Annotated § 37-1-107(d) provides:

> Any party may, within ten (10) days after entry of the magistrate's order, file a request with the court for a de novo hearing by the judge of the juvenile court. The judge shall allow a hearing if a request for hearing is filed.

However, despite the trial court's erroneous statement of the time for rehearing a magistrate's order in juvenile court, Mother has failed to demonstrate how this error proved harmful or that she relied on the statement to her detriment. There is no indication in the record that Mother attempted to file a request for rehearing before the juvenile court judge, nor does she assert on appeal that she ever asked for a review by the juvenile court judge of either of Magistrate Fratesi's orders. We therefore find the error to be harmless. *See generally Housewright v. McCormack*, No. E2016-00272-COA-R3-CV, 2016 WL 6958725, at *4 (Tenn. Ct. App. Nov. 29, 2016) ("Our harmless error rule considers whether the error 'more probably than not affected the judgment' or 'the substantial rights of the party.'" (quoting Tenn. R. App. P. 36(b))); *see also Boggs v. Rhea*, 459 S.W.3d 539, 547 (Tenn. Ct. App. 2014).

## IX. Conclusion

For the foregoing reasons, we affirm the trial court's March 18, 2022 orders denying Mother's May 7, 2021 "Petition for Contempt for Failure to Pay Medical/Dental Expenses & Child Support January 1, 2020 – Present" and her July 1, 2021 "Petition to Modify Child Support for Extraordinary Expenses & Deviations; and Petition to Extend Child Support to Age 21." We remand this matter to the trial court for enforcement of the judgment and collection of costs assessed below. Costs on appeal are assessed to the appellant, Nedra R. Hastings.

s/Thomas R. Frierson, II
THOMAS R. FRIERSON, II, JUDGE

18