# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 28, 2014 Session

## GREGORY LEE BOGGS, ET AL. v. DINAH K. RHEA

**Appeal from the Circuit Court for Greene County**
**No. 11CV288-TJW     Thomas J. Wright, Judge**

_____

### No. E2013-02859-COA-R3-CV-FILED-NOVEMBER 6, 2014

_____

Gregory Lee Boggs and Lisa Danielle (Pickens) Boggs ("Plaintiffs") sued Dinah K. Rhea ("Defendant") with regard to a motor vehicle accident that occurred in May of 2010 in Washington County, Tennessee. Defendant admitted responsibility for the accident and the case was tried before a jury solely on the issue of damages. After trial the Circuit Court for Greene County ("the Trial Court") entered judgment on the jury's verdict finding and holding that Plaintiffs were not entitled to any damages. Plaintiffs appeal to this Court raising issues concerning the jury's verdict, denial of their motion for additur or a new trial, and claimed improper statements by defense counsel in his closing argument. Defendant raises an issue on appeal with regard to the Trial Court's denial of her motion for discretionary costs. We find and hold that the record on appeal contains material evidence to support the jury's verdict and that there are no other reversible errors related to Plaintiffs' issues. We further find and hold that Defendant is entitled to an award of discretionary costs, and we remand to the Trial Court for a determination of the appropriate amount of discretionary costs. We affirm as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed as Modified; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and THOMAS R. FRIERSON, II, J., joined.

Jeffrey A. Cobble, Greeneville, Tennessee, for the appellants, Gregory Lee Boggs and Lisa Danielle (Pickens) Boggs.

Terrill L. Adkins, Knoxville, Tennessee, for the appellee, Dinah K. Rhea.

# OPINION

## Background

The accident at issue in this suit occurred on May 28, 2010 when a 2006 Nissan Sentra being driven by Defendant made contact with the rear of a 1998 Kia Sephia ("Kia") in which Ms. Boggs was a passenger. The Kia was owned by Mr. Boggs and was being driven at the time of the accident by Sarah Watson. At the time of the accident, Ms. Boggs and Mr. Boggs were engaged, but not yet married.

Plaintiffs filed suit against Defendant on May 26, 2011. Plaintiffs' complaint alleged, in pertinent part, that Ms. Boggs suffered injuries to her neck, cervical spine, and back as a result of the accident and that she sustained permanent injuries. The complaint contained no allegations about any property damage to the Kia or anything else. Defendant answered the complaint and admitted responsibility for the accident. On January 22, 2013, Plaintiffs amended their complaint to, among other things, allege damage to the Kia of approximately $2,000. The case proceeded to trial before a jury in October of 2013.

At the time of the accident, the Kia was stopped in traffic at the intersection of East Jackson Boulevard and Boone Street in Washington County when Defendant's vehicle made contact with the rear of the Kia. Defendant testified at trial and described the accident and the contact between her vehicle and the Kia as a bump. Defendant explained that her foot was on the brake, but that she had not come to a complete stop. She testified that she was traveling at a speed of less than one mile per hour at the time. Defendant testified that Ms. Boggs refused EMT treatment at the accident scene and also refused transportation to the emergency room.

Defendant testified that there was no damage to her vehicle from the accident. She stated: "Not even any paint on my car from hers." Photographs of Defendant's vehicle taken after the accident depicting the condition of the front of the vehicle were introduced as exhibits at trial. Defendant testified that she looked at the Kia at the accident scene, and she stated:

> There were several dents in the bumper not related to our accident. There was one tiny, little tiny V in the middle of her bumper that could have been where my car struck her, but there's nothing in my car - - in the front of the car. As you can see, it's just straight across there. I can't see any way that my car could have put that little V in there, because there's not anything protruding from my bumper to do that.

Defendant also testified that she saw no damage to the trunk of the Kia. When asked if she saw damage to other areas of the Kia, Defendant stated: "Yes. As I said, there were several dents in the bumper." When asked if she saw any damage to the sides of the Kia, Defendant stated: "I didn't - - I - - maybe so." She testified that the Kia was not new and "was kind of banged up."

Ms. Boggs testified that when the accident occurred, the Kia did not make contact with the vehicle stopped in front of it. Ms. Boggs admitted that during the accident her body did not make contact with any part of the Kia other than the seat she was sitting in at the time. Ms. Boggs did not ask for any medical treatment at the accident scene. An EMT arrived at the scene, but did not examine Ms. Boggs. Ms. Boggs stated this was "because I opted to drive my vehicle." Ms. Boggs admitted that she had "[n]o lump, bump, or bruise, but I do have a strain." After a police officer prepared a report at the scene Ms. Boggs went to the medical center to be checked out where, after being examined, she was released to leave and not admitted to the hospital.

Ms. Boggs admitted that she has not sought any medical evaluations or treatment for any problem with her neck or back since June 1, 2010. She also admitted that she has had no physical therapy, no shots, and no bandages with regard to her neck and back since that time.

Ms. Boggs claimed that she was unable to work from the date of the accident on May 28, 2010 until late August of 2010. Ms. Boggs admitted that during that time period, on July 4, 2010, she and Mr. Boggs were married.

Ms. Boggs was asked about the job she had at the time of the accident working for Advanced Call Center Technologies, LLC ("ACCT"), and she admitted that she dealt with people over the phone using a headset while seated at a computer. Ms. Boggs admitted that she has nothing from a doctor showing that she was unable to sit at a computer and answer the phone between May 28, 2010 and August 28, 2010. She stated: "I just had my work release form from the emergency room."

Ms. Boggs claimed that ACCT fired her, but a document prepared by ACCT and introduced as an exhibit at trial states that Ms. Boggs's employment was ended voluntarily to accept other work. Additionally, a State of Tennessee Department of Labor and Workforce Development Division of Employment Security Separation Notice signed by a representative of ACCT and introduced as an exhibit at trial shows that Ms. Boggs was employed by ACCT from June 22, 2009 through May 27, 2010, the later of which was the day prior to the accident.

Ms. Boggs worked at Arby's from August of 2010 until August of 2011, and the Arby's records show that she missed one day of work due to some coughing and one day of work due to a wrist injury. During the time she worked at Arby's, Ms. Boggs did not miss any time from work due to neck or back problems. Ms. Boggs voluntarily quit her job at Arby's because she and her husband chose to move to Kentucky. Ms. Boggs admitted that although she was supposed to work out a two week notice when she quit her job at Arby's, she simply failed to show up for work, and Arby's made a notation in her file to the effect of 'do not rehire.'

After quitting her job at Arby's, Ms. Boggs obtained a job in Kentucky with Fourteen Foods doing business as Dairy Queen. Ms. Boggs filled out a physical demands description form for this job, which she signed on August 6, 2011. The form states that the physical demands include standing, sitting, walking, bending frequently, twisting frequently, kneeling, climbing, reaching frequently, lifting up to thirty pounds occasionally, lifting up to fifty pounds 'seldomly,' carrying up to fifty pounds, repetitive motions, and grasping, and Ms. Boggs indicated that she could do all of these things. Ms. Boggs admitted that she put nothing on the form indicating that she had a history of back pain, or neck pain, or headaches.

From August 6, 2011 through the end of 2011, Ms. Boggs missed no days of work at the Dairy Queen due to neck or back pain or headaches. For the entire calendar year of 2012, Ms. Boggs missed no days of work at the Dairy Queen due to neck pain, back pain, or headaches.

Ms. Boggs saw health care providers for asthma and for her wrist and her knee during 2011 and 2012. Medical records from Takoma Medical Center where Ms. Boggs received treatment for coughing on May 12, 2011 contain no mention of neck pain. On June 28, 2011 Ms. Boggs went to Johnson City Medical Center for a hand injury. She admitted that she made no complaints of neck or back pain during that visit to the Johnson City Medical Center.

On October 30, 2011 Ms. Boggs went to the Appalachian Medical Center for treatment for congestion and a fever and cough, but made no complaints of back or neck pain. On February 5, 2012 Ms. Boggs again went to the Appalachian Medical Center, this time for treatment for an upset stomach. During this visit she made no complaints of neck or back pain or headaches. Ms. Boggs was seen at the Appalachian Medical Center for pneumonia on August 1, 2012, but made no complaints of neck or back pain or headaches during this visit. On November 9, 2012 she sought treatment at the Appalachian Medical Center for knee pain after she blew her knee out "going around where" she lived, but made no complaints of neck or back pain or headaches.

Ms. Boggs was asked about her testimony that her health insurance did not pay for the medical bills from the two visits after the accident, and she stated: "I didn't state that they didn't pay any. I said I had unpaid bills." When questioned further she admitted that the health care providers had accepted her insurance and "[t]hat three thousand has been paid on it, yes." Ms. Boggs admitted that neither of the two health care providers that she saw after the accident were testifying at trial.

Ms. Boggs admitted that Dr. Webster who was testifying on her behalf at trial had been paid a thousand dollars for his work on this case, and that Dr. Webster never had provided Ms. Boggs with any medical treatment. Ms. Boggs traveled from Kentucky[1] to meet with Dr. Webster and has not been back to see Dr. Webster for neck or back problems or headaches. Ms. Boggs also admitted that she has seen no other doctors for neck or back problems or headaches since she met with Dr. Webster.

Ms. Boggs admitted that there had been no repairs made to the Kia since the accident. She further testified that the Kia was a 1998 model that was purchased used approximately one year prior to the accident for approximately eight hundred dollars.

Mr. Boggs also testified at trial. Mr. Boggs admitted that he had been requested to produce a repair estimate for the alleged damage to the Kia and that he had failed to produce one. He also admitted that Plaintiffs' first complaint contains no allegations of damage to the Kia, and that the claim for damage to the Kia was added to the suit approximately two and a half years after the accident occurred.

At the time of the accident, Mr. Boggs was working occasionally doing construction and mechanic work, and Ms. Boggs was working full-time. At trial, when asked about testimony given by Ms. Boggs that he had to help her with housework because of the accident, Mr. Boggs first agreed with this statement. When confronted with his deposition testimony, however, Mr. Boggs admitted that he always had done the housework because Ms. Boggs worked full-time.

After trial the Trial Court entered Final Judgment on the jury's verdict on November 6, 2013 finding and holding that Plaintiffs were not entitled to any damages and dismissing Plaintiffs' claims. Plaintiffs filed a motion for additur or in the alternative for a new trial, which the Trial Court denied. Plaintiffs appeal to this Court.

---

[1]Ms. Boggs testified that she and her husband moved back to Greeneville, TN at the end of February or beginning of March of 2013.

**Discussion**

Although not stated exactly as such, Plaintiffs raise three issues on appeal: 1) whether the jury's verdict is supported by material evidence; 2) whether the Trial Court erred in denying Plaintiffs' motion for additur or in the alternative a new trial; and, 3) whether statements made by Defendant's counsel during closing argument constitute reversible error. Defendant raises an issue regarding whether the Trial Court erred in denying her motion for discretionary costs.

We begin by addressing whether the jury's verdict is supported by material evidence. As our Supreme Court has instructed:

> An appellate court shall only set aside findings of fact by a jury in a civil matter if there is no material evidence to support the jury's verdict. Tenn. R. App. P. 13(d); *Whaley v. Perkins*, 197 S.W.3d 665, 671 (Tenn. 2006). In determining whether there is material evidence to support a verdict, we shall: "(1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all [countervailing] evidence." *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 704 (Tenn. 2000) (citing *Crabtree Masonry Co. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn 1978)). "Appellate courts shall neither reweigh the evidence nor decide where the preponderance of the evidence lies." *Barnes*, 48 S.W.3d at 704. If there is any material evidence to support the verdict, we must affirm it; otherwise, the parties would be deprived of their constitutional right to trial by jury. *Crabtree Masonry Co.*, 575 S.W.2d at 5.

*Creech v. Addington*, 281 S.W.3d 363, 372 (Tenn. 2009).

Plaintiffs argue in their brief on appeal that the jury must have misunderstood the concept of burden of proof and that the jury misapplied the evidence when reaching its verdict. Plaintiffs admitted, however, in their motion for additur, or in the alternative for a new trial, that the Trial Court "appropriately instructed the jury that it was to consider the case by reference only to the evidence and sworn testimony which was presented," and "also appropriately charged the jury regarding the burden of proof of each party." Plaintiffs argue in their brief on appeal that the jury "obviously assumed facts not in evidence, thereby reaching a conclusion which was not supported by *any* evidence, much less by the *weight* of the evidence thereof." (emphasis in original). Plaintiffs are mistaken.

The evidence in the record on appeal shows that the accident occurred on May 28, 2010. The jury heard Defendant's testimony that she was traveling at a speed of less than one mile per hour and that she had her foot on the brake when her vehicle made contact with the Kia. The jury also heard Defendant describe the contact as a bump. The jury saw photographs taken of Defendant's vehicle after the accident, which show no damage to Defendant's vehicle, and heard Defendant's testimony that she looked at the Kia after the accident and saw no damage to it other than dents likely not related to the accident at issue.

Plaintiffs claimed that Ms. Boggs suffered injuries to her neck, cervical spine, and back as a result of the accident and that she sustained permanent injuries. Ms. Boggs, however, testified at trial and admitted that since June 1, 2010 she has not sought any medical evaluations or treatment for any problem with her neck or back. She also admitted that she has had no physical therapy, no shots, and no bandages with regard to her neck and back since that time.

Furthermore, although Ms. Boggs claimed she was unable to work from the date of the accident on May 28, 2010 until late August of 2010, she admitted that she has nothing from a doctor showing that she was unable to sit at a computer and answer the phone during that time period. In fact, she stated: "I just had my work release form from the emergency room." Ms. Boggs claimed that ACCT, the employer she asserted she worked for at the time of the accident, fired her. A document prepared by ACCT and introduced as an exhibit at trial, however, states that Ms. Boggs's employment was ended voluntarily to accept other work. Additionally, the jury saw a State of Tennessee Department of Labor and Workforce Development Division of Employment Security Separation Notice signed by a representative of ACCT and introduced as an exhibit at trial, which shows that Ms. Boggs was employed by ACCT through May 27, 2010, which was the day prior to the accident. The evidence in the record on appeal also shows that Ms. Boggs missed no days of work from her job at Arby's from August of 2010 until August of 2011 due to neck or back pain and that she missed no days of work due to neck or back pain from her job at the Dairy Queen from August 6, 2011 through the entire calendar year of 2012. The jury also heard Mr. Boggs admit that despite the allegations that Mr. Boggs had to help Ms. Boggs with housework due to the accident, Mr. Boggs actually always had done the housework because Ms. Boggs worked full-time.

With regard to alleged damage to the Kia, Ms. Boggs admitted that there had been no repairs made to the Kia since the accident. She further testified that the Kia was a 1998 model that was purchased used approximately one year prior to the accident for approximately eight hundred dollars. The jury heard Mr. Boggs admit that he had been requested to produce a repair estimate for the alleged damage to the Kia and that he had failed to produce one. Mr. Boggs also admitted that Plaintiffs' first complaint contains no

allegations of damage to the Kia, and that the claim for damage to the Kia was added to the suit approximately two and a half years after the accident occurred.

It is clear from the record on appeal that the jury made credibility determinations, as is its responsibility to do, and that it found Plaintiffs' claims to be not credible. It is within the jury's province to make determinations regarding witness credibility. *E.g., Alexander v. Armentrout*, 24 S.W.3d 267, 274 (Tenn. 2000); *Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822, 823 (Tenn. 1994).

Plaintiffs argue in their brief on appeal that Dr. Webster's testimony "was not rebutted by any other expert." Dr. Webster's testimony, however, does not appear in the record on appeal. Plaintiffs, as the appellants, had the duty "to prepare a record which conveys a fair, accurate and complete account of what transpired in the trial court with respect to the issues which form the basis of the appeal." *Nickas v. Capadalis*, 954 S.W.2d 735, 742 (Tenn. Ct. App. 1997) (*quoting State v. Boling*, 840 S.W.2d 944, 951 (Tenn. Crim. App. 1992)). Furthermore, even in the absence of competing expert testimony, the jury could make credibility determinations regarding Dr. Webster's testimony, and could choose to find such testimony not credible.[2]

Plaintiffs also argue in their reply brief[3] on appeal:

[Defendant's] speed WAS at issue, and while no witness made any specific statement about speed, [Defendant's attorney] attempted to testify for her that she was going less than one mile per hour. Such a slow speed could never have caused significant damage to the [Kia], and [Plaintiffs'] testimony was that there was at least $1,500 worth of damage to the rear portion of their car. A "less-than-one-mile-an-hour" impact could not have created this amount of damage.

Plaintiffs simply are wrong in their assertion about a lack of evidence regarding speed. There is testimony in the record on appeal about the speed at which Defendant was traveling at the time of the accident. Specifically, the following exchange occurred during Defendant's testimony:

---

[2]We are not saying that the jury found Dr. Webster's testimony not credible. We merely note that it is within the jury's province to find a witness, including an expert witness, not credible even in the absence of competing testimony.

[3]Plaintiffs include this argument in support of their issue regarding alleged improper statements made by Defendant's attorney during closing argument. This argument, however, also applies to whether there was material evidence to support the jury's verdict.

A.  My foot was on the brake.

Q.  Right.

A.  But I had not come to a complete stop.

Q.  Right.  The car was still moving when you struck the back of the [Kia], right?

A.  Less than a mile an hour, yes.

The jury heard this testimony that Defendant's vehicle was traveling at less than one mile per hour at the time of impact.  Clearly, the jury agreed with Plaintiffs' assertion that: "Such a slow speed could never have caused significant damage to the [Kia], . . . ."

Taking the strongest legitimate view of all the evidence in favor of the verdict, assuming the truth of all evidence that supports the verdict, allowing all reasonable inferences to sustain the verdict and discarding all countervailing evidence, as we must, we find that there is material evidence in the record to support the jury's verdict.  As such, we must affirm the jury's verdict.

We next consider whether the Trial Court erred in denying Plaintiffs' motion for additur or in the alternative a new trial.  To begin, our Supreme Court has instructed that: "the power to suggest an additur in favor of a plaintiff is dependent upon there first being a verdict in favor of that plaintiff . . . [i]f there are no such damages awarded, there cannot be an additur." *McCall v. Waer*, 487 S.W.2d 308, 311 (Tenn. 1972).  The jury awarded zero damages to Plaintiffs in this case.  The issue of damages was the only issue tried.  Thus, there was no verdict in favor of Plaintiffs.  As such, we find no error in the Trial Court's denial of Plaintiffs' motion for additur.

With regard to a motion for new trial, this Court has explained:

A trial court is given wide latitude in granting a motion for a new trial, and a reviewing court will not overturn such a decision unless there has been an abuse of discretion.  *Mize v. Skeen*, 63 Tenn. App. 37, 42-43, 468 S.W.2d 733, 736 (1971); *see also Tennessee Asphalt Co. v. Purcell Enter.*, 631 S.W.2d 439, 442 (Tenn. App. 1982).  As the thirteenth juror, the trial judge is required to approve or disapprove the verdict, to independently weigh the evidence, and to determine whether the evidence preponderates in favor of or against the jury verdict.  *Mize*, 63 Tenn. App. at 42, 468 S.W.2d at 736.  If the trial judge is

dissatisfied with the verdict, he should set it aside and grant a new trial. *Hatcher v. Dickman*, 700 S.W.2d 898, 899 (Tenn. App. 1985)(*quoting Cumberland Tel. & Tel. Co. v. Smithwick*, 112 Tenn. 463, 469, 79 S.W. 803, 804 (1904)).

*Loeffler v. Kjellgren*, 884 S.W.2d 463, 468 (Tenn. Ct. App. 1994).

In the case now before us on appeal, the Trial Court in its order denying Plaintiffs' motion for new trial stated that it had, acting as the thirteenth juror, carefully considered and weighed all of the evidence and that it affirmed the jury's verdict. We find no abuse of discretion in the Trial Court's denial of Plaintiffs' motion for new trial.

Next, we consider whether statements made by Defendant's counsel during closing argument constitute reversible error. Plaintiffs argue in their brief on appeal that Defendant's counsel made improper statements during closing argument about the fact that Plaintiffs had not introduced specific evidence including photographs of the alleged damage to the Kia, testimony of the emergency room physician who treated Ms. Boggs after the accident, and the medical records from the emergency room visit. Plaintiffs assert in their brief that these statements caused the jury to doubt the credibility of Plaintiffs. Even if statements about this 'missing evidence' were error, and we make no decision that these statements were or were not error, such error would be harmless error as our considering the record as a whole shows that it did not "more probably than not [affect] the judgment or . . . result in prejudice to the judicial process." Tenn. R. App. P. 36 (b).

Finally, we consider Defendant's issue regarding whether the Trial Court erred in denying her motion for discretionary costs. We review a Trial Court's decision to award discretionary costs for abuse of discretion. *Quebecor Printing Corp. v. L & B Mfg. Co.*, 209 S.W.3d 565, 583 (Tenn. Ct. App. 2006). As this Court has explained:

Tenn. R. Civ. P. 54.04(2) permits prevailing parties in civil actions to recover "discretionary costs." The purpose of this provision is not to punish the losing party but rather to help make the prevailing party whole. *Owens v. Owens*, 241 S.W.3d 478, 496-97 (Tenn. Ct. App. 2007); *Scholz v. S. B. Int'l, Inc.*, 40 S.W.3d 78, 85 (Tenn. Ct. App. 2000). The particular equities of the case may influence a trial court's decision to award discretionary costs, *Perdue v. Green Branch Mining Co.*, 837 S.W.2d 56, 60 (Tenn. 1992), and, therefore, parties are not entitled to discretionary costs simply because they prevail. *Scholz v. S. B. Int'l, Inc.*, 40 S.W.3d at 85; *Sanders v. Gray*, 989 S.W.2d 343, 345 (Tenn. Ct. App. 1998).

The party seeking discretionary costs has the burden of convincing the trial court that it is entitled to these costs. *Carpenter v. Klepper*, 205 S.W.3d 474, 490 (Tenn. Ct. App. 2006); *Stalsworth v. Grummons*, 36 S.W.3d 832, 835 (Tenn. Ct. App. 2000). As a general matter, a party seeking discretionary costs can carry its burden by filing a timely and properly supported motion demonstrating (1) that it is the prevailing party, (2) that the costs being sought are included in Tenn. R. Civ. P. 54.04(2), (3) that the costs are necessary and reasonable, and (4) that it has not engaged in conduct during the litigation that would justify depriving it of the costs it is requesting. *Trundle v. Park*, 210 S.W.3d 575, 582 (Tenn. Ct. App. 2006); *Waggoner Motors, Inc. v. Waverly Church of Christ*, 159 S.W.3d 42, 65-66 (Tenn. Ct. App. 2004); *Mass. Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 35-36 (Tenn. Ct. App. 2002).

*Duran v. Hyundai Motor America, Inc.*, 271 S.W.3d 178, 214-15 (Tenn. Ct. App. 2008).

In pertinent part, Tenn. R. Civ. P. 54.04, provides:

Costs not included in the bill of costs prepared by the clerk are allowable only in the court's discretion. Discretionary costs allowable are: reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions (or stipulated reports) and for trials, reasonable and necessary interpreter fees not paid pursuant to Tennessee Supreme Court Rule 42, and guardian ad litem fees; travel expenses are not allowable discretionary costs. . . .

Tenn. R. Civ. P. 54.04(2).

Plaintiffs argue in their reply brief on appeal that Defendant was not entitled to discretionary costs, in part, because Defendant cannot be considered the prevailing party. Plaintiffs are mistaken. In the case now before us on appeal Defendant admitted responsibility for the accident in her answer to Plaintiffs' complaint. Thus, the only issue that was tried was the issue of damages. As discussed more fully above, the jury found that Plaintiffs were entitled to zero damages, and the Trial Court in its role as thirteenth juror approved the jury's verdict. Defendant was the prevailing party.

In its order denying Defendant's motion for discretionary costs the Trial Court stated that although Defendant admitted responsibility for the accident, Ms. Boggs had some medical expenses that she incurred on the day of the accident, and, therefore, discretionary costs were denied. The jury, however, found that Plaintiffs had zero damages. The jury did not find that Ms. Boggs incurred medical expenses that constituted damages.

-11-

Defendant filed a timely and properly supported motion for discretionary costs. A careful and thorough review of the record on appeal reveals no conduct by Defendant during the litigation that would justify depriving Defendant of discretionary costs. We find and hold that Defendant is entitled to an award of discretionary costs. We, therefore, remand this case to the Trial Court for a determination of the appropriate amount of such award.

**<u>Conclusion</u>**

The judgment of the Trial Court is affirmed as modified, and this cause is remanded to the Trial Court for determination of the proper amount of discretionary costs to be awarded to Defendant and for collection of the costs below. The costs on appeal are assessed against the appellants, Gregory Lee Boggs and Lisa Danielle (Pickens) Boggs, and their surety.

_____
D. MICHAEL SWINEY, JUDGE