FILED
12/03/2024
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 9, 2024 Session

**TRAY SIMMONS v. DR. SHAHIDUL ISLAM ET AL.**

**Appeal from the Circuit Court for Davidson County**
**No. 15C1107    Joseph P. Binkley, Jr., Judge**

_____

**No. M2023-01698-COA-R3-CV**

_____

A patient brought a health care liability action against his psychiatrist and the psychiatrist's employer, alleging the psychiatrist engaged in improper sexualized conduct that caused him psychological injury.  The patient secured an expert witness in support of his suit, but the expert withdrew following the expert's deposition.  The patient obtained a new expert witness.  However, relying on the cancellation rule, the trial court determined a conflict existed between the second expert's affidavit and deposition testimony relating to the issue of damages.  The trial court granted summary judgment to the defendants and also granted the defendants' request for an award of discretionary costs.  The patient appeals.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JEFFREY USMAN, J., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Tray Simmons, Hermitage, Tennessee, pro se.

Wendy L. Longmire, T. William A. Caldwell, and Hallie Gillam, Nashville, Tennessee, for the appellees, Dr. Shahidul Islam and Anxiety Depression Disorders Clinic.

**OPINION**

I.

Plaintiff Tray Simmons[1] is a survivor of childhood rape which he experienced in

_____

[1] This court seeks to preserve the anonymity of victims of sexual assault in its opinions. Mr. Simmons, who has endeavored to offer inspiration to others through his writings in connection with this subject, has elected to proceed in his own name.  We honor his decision by referring to Mr. Simmons by

2010.  Dr. Shahidul Islam, an employee of the Anxiety Depression Disorders Clinic (the Clinic), guided Mr. Simmons through therapy for an extended period until Mr. Simmons stopped seeing Dr. Islam due to financial and scheduling concerns.  When Mr. Simmons later released a book called *Layers* that explored his journey through recovery, he spoke positively and appreciatively of Dr. Islam's therapeutic assistance.

Mr. Simmons alleges that "about 2 ½ years" after stopping treatment, Dr. Islam reached out to him about resuming therapy.  This encouragement initially came in the form of phone calls.  Mr. Simmons maintains that these phone calls were inappropriate, with Dr. Islam reportedly pressuring him to discuss sensitive topics including his sex drive and his general intimacy levels.  Dr. Islam also allegedly invited Mr. Simmons to visit massage parlors with him.  These conversations prompted Mr. Simmons to contact local law enforcement in hopes of setting up "a sting operation."  While the record suggests that no sting operation occurred, Mr. Simmons was under the impression that law enforcement would support his efforts and, "[t]o that end, [Mr. Simmons] relented and agreed to meeting for massages in hopes of capturing Dr. Islam on recording and having law enforcement catch him at the massage parlor."

Mr. Simmons later met with Dr. Islam at the Clinic on November 25, 2013, for what was supposed to be an in-person therapy session.  Mr. Simmons asserts, however, that Dr. Islam engaged in unprofessional, sexually charged behavior during this meeting.  Specifically, Mr. Simmons alleges that Dr. Islam encouraged him to read the chapter of his book *Layers* aloud in which he described the 2010 rape while Dr. Islam visibly touched himself, made physical contact with Mr. Simmons, and backed Mr. Simmons into the corner of the office.  This experience made Mr. Simmons feel "raped all over again," spurred "anxiety and nightmares," and afflicted him with "a fear of getting psychiatric counseling."  Dr. Islam denies Mr. Simmons's allegations.

Mr. Simmons sued Dr. Islam and the Clinic under Tennessee's Health Care Liability Act (HCLA).  In support of his claims, Mr. Simmons initially relied on Dr. William D. Richie as his sole expert witness.  Dr. Richie concluded that Mr. Simmons "experienced inappropriate sexually suggestive behavior from his former Psychiatrist" that left him "emotionally scarred."  Dr. Richie opined that Dr. Islam transgressed the "physician-patient boundary," and diagnosed Mr. Simmons with post-traumatic stress disorder (PTSD) and depression.  Dr. Richie recommended Mr. Simmons engage in "chaperoned cognitive behavioral therapy by a Certified Psychologist, trauma focused support group therapy, and chaperoned follow up sessions with a Board Certified Psychiatrist for medication adjustments."  The record is largely silent regarding how the case proceeded between mid-2015 and mid-2022. What is clear is that after being deposed in June 2022, Dr. Richie elected to withdraw from Mr. Simmons's case, declining to continue as an expert witness on behalf of Mr. Simmons.

name.

- 2 -

Dr. Richie's withdrawal prompted the Defendants to seek summary judgment. They argued that Tennessee's Health Care Liability Act requires a plaintiff to prove each element of his or her case through expert testimony and asserted that "[w]ith less than three months before trial in a matter that has been pending for over seven years, Plaintiff [now] has no expert to prove any of the required elements." In response, Mr. Simmons did not dispute this contention but did seek additional time to identify a new expert; the trial court granted Mr. Simmons's request.

Mr. Simmons eventually found a new expert: Dr. Sherri Studstill. Mr. Simmons described Dr. Studstill in his expert disclosure as "a licensed physician who has a background practicing in Family Medicine, Emergency Medicine, Occupational Medicine, Sports Medicine, and Urgent Care Medicine, and holds a Masters in Public Health Degree with a focus on Behavioral Science and Health Science." The Defendants objected to this characterization and to her competency to serve as an expert, as both of Dr. Studstill's medical licenses were suspended at the time. Dr. Studstill opined in her affidavit that "Dr. Islam exhibited unprofessional conduct and violated the standard of care as it [pertained] to Mr. Simmons" and wrote that she intended to "provide expert testimony that Dr. Islam's standard of care or substandard of care caused injury and/or re-injury to Mr. Simmons." Specifically, she asserted that "[t]here is evidence that Mr. Simmons suffered monetary and mental health harm as a result from either the alleged events occurring in Dr. Islam's office or the documented events from the recorded [phone] calls."

The Defendants deposed Dr. Studstill. During that deposition, the Defendants questioned Dr. Studstill on a variety of matters including her opinion in relation to Mr. Simmons's damages. In her deposition, Dr. Studstill made the following statements related to damages:

[Counsel:] How are you saying that Mr. Simmons has been damaged?

[Dr. Studstill:] I've just used – psychologically, you can – if something happens you can . . . those triggers still cause harm. It doesn't matter if they were resolved before. There are things we all go through. And those traumas can be reignited by a certain instance or something that can cause again. And it does cause us damage because we still have to go through and heal through those traumas that were reignited.

[Counsel:] You're talking in sort of the royal sense, the royal "we." Can you specifically tell me what damage Mr. Simmons suffered?

[Dr. Studstill:] Definitely emotional damage. It could be – it could be – it could be emotional damage or psychological damage.

- 3 -

[Counsel:] It could be?

[Dr. Studstill:] Yes. You can't say –

[Counsel:] Are you calling it? Are you diagnosing him with psychological damage?

[Dr. Studstill:] No. I'm telling you the course of how things would play out. But I didn't see [Mr. Simmons] as a patient. He's not my patient.

[Counsel:] You did not see him as a patient?

[Dr. Studstill:] Absolutely not. There is no patient-physician relationship, period.

[Counsel:] So thus you're not giving any opinions about what care or treatment or the cost of treatment he will require, correct?

[Dr. Studstill:] Correct.

[Counsel:] You're not giving any expert opinions about any damage that he suffered?

[Dr. Studstill:] I have put – I didn't go into damages. I just basically put that you would expect damages, damages can be reignited. It doesn't say they will be but that may be.

[Counsel:] You're saying it's possible?

[Dr. Studstill:] Yes. And that's backed up by the APA as well.

[Counsel:] So the crux of your opinion is that damages are possible?

[Dr. Studstill:] Absolutely.

Relying on these statements, the Defendants again sought summary judgment. Among other things, they argued that Dr. Studstill's deposition testimony could not be reconciled with her prior written statements and that her testimony on the element of damages constituted a nullity. Specifically, the Defendants argued that Dr. Studstill's prior position, *i.e.*, that evidence demonstrated the existence of damages, could not be reconciled with her deposition testimony that she "didn't go into damages" and that she only believed damages were "possible" based on Mr. Simmons's allegations.

- 4 -

Mr. Simmons disagreed, emphasizing that Dr. Studstill also stated that he "definitely" suffered "emotional damages" and that "damages result when we are traumatized, period." During the hearing on the Defendants' motion for summary judgment as a supplement her testimony, Mr. Simmons attempted to offer "an unsigned supplemental Declaration of Dr. Studstill" to bolster his contention. The trial court "did not consider the [unsigned] proposed supplementation" because it was "untimely and unreliable."

Following the hearing, the trial court granted the Defendants' motion for summary judgment. In doing so, the trial court concluded that Dr. Studstill was competent to serve as an expert, but the trial court also found that Dr. Studstill "gave conflicting testimony about whether or not the Plaintiff was damaged." The trial court concluded that Dr. Studstill's deposition testimony triggered the cancellation rule and invalidated her earlier opinions related to Mr. Simmons's alleged damages. Concluding that Mr. Simmons lacked expert testimony on at least one of the required elements of a healthcare liability action, specifically damages, the trial court reasoned that Mr. Simmons could not prevail and awarded summary judgment to the Defendants.

Mr. Simmons filed a motion to alter or amend. Therein, he argued that the trial court did not review all the relevant documents. Mr. Simmons also argued that the Defendants did not actually invoke the cancellation rule, suggesting that the trial court violated his due process rights by raising the cancellation rule "sua sponte." The Defendants disagreed with both of Mr. Simmons's positions, explaining that the trial court reviewed Dr. Studstill's full deposition and that the Defendants had invoked the cancellation rule in their written motion for summary judgment.

The Defendants also requested their discretionary costs under Tennessee Rule of Civil Procedure 54.04. The Defendants initially sought $21,311.08 in deposition costs and expert fees, which was later amended to $21,079.83. The Defendants requested two broad categories of expenses: "depositions" and "expert fees." Each category was further divided into specific line items. Within the "depositions" category, the Defendants included a $369.50 line item labeled "Brooks Court Reporting Court Reporter Charge Deposition Finestone," which applied to the expert witness that the Defendants had intended to present at trial to rebut Dr. Studstill's testimony. The Deposition category also included a similar line item related to Dr. Richie, totaling $1,224.20, as well as another similar line item for Dr. Studstill, totaling $2,626.73. The Defendants also included Dr. Studstill's minimum prepayment fee and her remaining post-deposition fees in the "expert fees" category, which totaled $4,000. Mr. Simmons argued that several of these fees were unreasonable, suggesting that some of the depositions could have been shorter or, in the case of Dr. Richie, were taken "in bad faith." Because Mr. Simmons's counsel withdrew following the summary judgment hearing, Mr. Simmons also asserted that Tennessee Code Annotated section 20-12-119 prohibited the court from awarding discretionary costs as he was a pro se litigant who had not acted unreasonably during the lawsuit.

The trial court held a hearing on both motions. Mr. Simmons and the trial court engaged in multiple colloquies during this hearing. Regarding an assertion from Mr. Simmons that the trial court had overlooked relevant documents, the trial court inquired whether Mr. Simmons or his then-counsel cited to those documents in his written materials arguing in opposition to summary judgment. Mr. Simmons responded that, regardless of whether they had been cited, the trial court had an obligation to assess the entire record and decide from a review of the full record whether summary judgment was warranted. The trial court disagreed and in doing so distinguished between submitting documents generally and specifically citing them in supporting an argument in relation to summary judgment. The trial court indicated the latter, citation to the materials, is required and that Mr. Simmons's failure to do so meant his points would be subject to waiver. Mr. Simmons also continued to advance his contention that it was the trial court, not the Defendants, that invoked the cancellation rule, which the Defendants argued was simply not the case. The trial court asked Mr. Simmons to explain how Dr. Studstill's testimony, taken as a whole, was not speculative and inconsistent regarding the element of damages. Mr. Simmons did not provide a direct answer. Instead, Mr. Simmons argued that "in all the evidence that was given to the Court and that's provided in this alter or amend [motion] with the exhibits, Dr. Studstill met the [required] degree of medical certainty" to support his case. When the trial court pointed out that some of Dr. Studstill's language amounted to "speculation," Mr. Simmons agreed.

Ultimately, the trial court denied Mr. Simmons's motion to alter or amend. The trial court also awarded the Defendants their requested discretionary costs, stating that their request was "well taken" and that their desired costs were "reasonable and necessary."

Mr. Simmons appealed. Arguing pro se on appeal, he raises six issues, which he frames in the following manner. One, "[t]he Trial Court erred in allowing the Appellees to commit fraud of intentional or misrepresentation to the trial court." Two, "[t]he Trial Court erred because the Trial Court incorrectly denied the Supplemental Interrogatories in the exhibits as untimely however the Interrogatories in the exhibits were in the original motion for Summary Judgment and the Supplemental under Tn. R. Civ. P. 60.02(1) and Tn. R. Civ. 26.02 are in the motion to Alter or Amend are not untimely." Three, "[t]he Trial Court erred to the undisputed fact of law and new evidence not reviewed by the trial court." Four, "[t]he Trial Court erred because Causation was established by Dr. Sherri Studstill." Five, "[t]he Trial Court erred in evoking the Cancelation Rule." Six, "[t]he Trial Court erred in granting discretionary cost to the Appellee's."

Dr. Islam and the Clinic argue in opposition to Mr. Simmons's contentions. They insist that the trial court properly granted summary judgment and discretionary costs. The Defendants raise two additional issues on appeal. One, "[d]id the trial court err by granting the Plaintiff - Appellant Mr. Tray Simmons ('Mr. Simmons') a continuance of trial and additional time to obtain an expert in lieu of hearing the Islam Defendant's Motion for

Summary Judgment?" Two, "[d]id the trial court err in its finding that Dr. Sherri Studstill was qualified and competent to give an opinion as the applicable standard of care for physicians practicing in the same or similar specialty as Dr. Islam in 2013?"

## II.

As noted above, Mr. Simmons is proceeding pro se in this appeal. Pro se litigants "are entitled to fair and equal treatment by the courts." *Vandergriff v. ParkRidge E. Hosp.*, 482 S.W.3d 545, 551 (Tenn. Ct. App. 2015). Courts should be mindful that pro se litigants often lack any legal training and many are unfamiliar with the justice system. *State v. Sprunger*, 458 S.W.3d 482, 491 (Tenn. 2015). Accordingly, courts should afford some degree of leeway in considering the briefing from a pro se litigant, *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003), and should consider the substance of the pro se litigant's filing. *Poursaied v. Tennessee Bd. of Nursing*, 643 S.W.3d 157, 165 (Tenn. Ct. App. 2021).

Pro se litigants, however, may not "shift the burden of litigating their case to the courts." *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000). Additionally, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her." *Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 615 (Tenn. 2010). It is imperative that courts remain "mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

## III.

Mr. Simmons contends that "[t]he Trial Court erred in allowing the Appellees to commit fraud of intentional or misrepresentation to the trial court." There are challenges in understanding precisely how Mr. Simmons arrives at the conclusion that the Defendants' briefing in seeking summary judgment before the trial court constituted a misrepresentation or fraud upon the trial court. To the best of our understanding, it appears that Mr. Simmons is asserting that the Defendants were not free to argue that Mr. Simmons had failed to offer expert testimony as to damages in seeking summary judgment in response to Dr. Studstill's deposition testimony. In Mr. Simmons's view, the Defendants were not free to make this argument because there is other evidence that did establish that Dr. Studstill was offering a medical opinion to a level of medical certainty sufficient to support a determination that he did suffer damages as a result of Dr. Islam's actions. Mr. Simmons fails to explain his contention that this legal argument from the Defendants constitutes fraud or misrepresentation upon the trial court. Beyond his contention that the trial court erred in its analysis of the merits of applying the cancellation rule, which we address below, it is also unclear from Mr. Simmons's argument precisely what he believes the trial court should have done differently in response to what he asserts is a fraudulent summary judgment brief. In considering Mr. Simmons's argument as to this issue, we must be

mindful of the neutral role of this court and avoid lawyering for a party. *See Sneed*, 301 S.W.3d at 615; *Hessmer*, 138 S.W.3d at 903. Given the deficiencies in his argumentation and support therefore, we find Mr. Simmons's position unavailing and find no reversible error by the trial court in connection with its manner of addressing the Defendants' summary judgment briefing.

IV.

Mr. Simmons also argues that "[t]he Trial Court erred because the Trial Court incorrectly denied the Supplemental Interrogatories in the exhibits as untimely however the Interrogatories in the exhibits were in the original motion for Summary Judgment and the Supplemental under Tn. R. Civ. P. 60.02(1) and Tn. R. Civ. 26.02 are in the motion to Alter or Amend are not untimely." Having reviewed Mr. Simmons's briefing in relation to this issue, there are significant challenges in understanding how Mr. Simmons's argument actually relates to the trial court's ultimate adverse ruling against him in this case. The combination of the deficiencies in Mr. Simmons's argument, joined with his failure to appropriately cite the record in supporting his argument, places this court in the position of needing to lawyer for him in order to develop this argument to an extent that it could be considered on the merits. This court must be mindful of its neutral role, and it must avoid lawyering for a party. *See Sneed*, 301 S.W.3d at 615; *Hessmer*, 138 S.W.3d at 903. Accordingly, we conclude that this issue is waived.

V.

Mr. Simmons's third issue, copied verbatim from his briefing, is that "[t]he Trial Court erred to the undisputed fact of law and new evidence not reviewed by the trial court." Much of Mr. Simmons's argument in connection with this issue overlaps with his challenge to the trial court's ruling regarding the cancelation rule, which we address below. There are two issues, however, that are addressed in his briefing in connection with this issue that have separate resonance from this core issue of the application of the cancelation rule. One, Mr. Simmons argues that the trial court erred by failing to consider an unsigned supplemental declaration from Dr. Studstill that he endeavored to present on the day of the hearing on the Defendants' summary judgment motion. Two, Mr. Simmons contends that the trial court erred by failing to consider all of the materials presented in the record and instead limiting its analysis at the summary judgment stage to the materials cited by the parties in their filings.

With regard to declining to consider an unsigned declaration from Dr. Studstill, we find no error by the trial court. Pursuant to Tennessee Rule of Civil Procedure 56.04, in response to a motion for summary judgment, "[t]he adverse party may serve and file opposing affidavits not later than five days before the hearing." *Cf. Cartwright v. Tenn. Farmers Mut. Ins. Co.*, 453 S.W.3d 910, 915 (Tenn. Ct. App. 2014) (stating that "Rule 56 clearly and unambiguously provides that Plaintiff was required to serve and file her

- 8 -

response to Defendant's motion for summary judgment no later than five days before the hearing. Plaintiff served and filed her response *exactly* five days before the hearing, which is *not later* than five days. As such, Plaintiff's response to Defendant's motion for summary judgment was timely filed."). On appeal, Mr. Simmons has provided no indication that he filed a motion pursuant to Tennessee Rule of Civil Procedure 6.02 seeking an enlargement of time even after missing the deadline nor did he indicate what his "excusable neglect" would be. Furthermore, addressing an unsigned affidavit from a medical expert, Judge Koch wrote on behalf of this court that "[t]he document, without a signature or oath, does not commit its purported author to any of the substantive statements it contains and, thus, has no evidentiary value. As such, it could not qualify as the sort of evidentiary material required by Tenn. R. Civ. P. 56.04 to create a genuine issue of material fact." *Kenyon v. Handal*, 122 S.W.3d 743, 752 (Tenn. Ct. App. 2003). Accordingly, we find no error by the trial court in declining to consider Dr. Studstill's late and unsigned affidavit.

We similarly find Mr. Simmons's contention that the trial court erred by failing to review materials beyond those cited by the parties to be unavailing. Trial court judges are not responsible for developing parties' cases for them. Tennessee Rule of Civil Procedure 56.03 plainly places the onus upon the parties to cite the court to what needs to be reviewed in determining whether there are material facts that are in dispute:

> In order to assist the Court in ascertaining whether there are any material facts in dispute, any motion for summary judgment made pursuant to Rule 56 of the Tennessee Rules of Civil Procedure shall be accompanied by a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each fact shall be set forth in a separate, numbered paragraph. **Each fact shall be supported by a specific citation to the record**.

> Any party opposing the motion for summary judgment must, not later than five days before the hearing, serve and file a response to each fact set forth by the movant either (i) agreeing that the fact is undisputed, (ii) agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (iii) demonstrating that the fact is disputed. **Each disputed fact must be supported by specific citation to the record.** Such response shall be filed with the papers in opposition to the motion for summary judgment.

> In addition, the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried. Each such disputed fact shall be set forth in a separate, numbered paragraph **with specific citations to the record supporting the contention that such fact**

**is in dispute**.

If the non-moving party has asserted additional facts, the moving party shall be allowed to respond to these additional facts **by filing a reply statement in the same manner and form as specified above**.

Tenn. R. Civ. P. 56.03 (emphasis added).

The trial court is not under an obligation to scour the parties' filings in search of evidence the court has not been cited to support a determination that there exists a material disputed fact. *See*, *e.g.*, *Jobe v. Goodwill Indus. of Middle Tenn., Inc.*, No. M2017-02299-COA-R3-CV, 2018 WL 2671613, at \*6 (Tenn. Ct. App. June 4, 2018) ("Even though the testimony that Ms. Jobe now cites on appeal was included within the full-length depositions submitted to the trial court, 'it was not the trial court's responsibility to blindly scour the record to identify any genuine issues of material fact that were not identified or argued in [the plaintiff's] response [to the motion for summary judgment].'" (quoting *Jones v. City of Union City*, No. W2013-02358-COA-R3-CV, 2015 WL 9257815, at \*11 n.4 (Tenn. Ct. App. Dec. 17, 2015)). In declining to scour the record to address failures of the parties to cite thereto, Tennessee appellate courts have oft noted that appellate court judges are not like pigs looking for truffles.[2] Trial court judges similarly lack a porcine deportment. *See*, *e.g.*, *Halterman-Scott v. Tenn. Soc'y of Certified Pub. Accountants*, No. M2024-00373-COA-R3-CV, 2024 WL 4212346, at \*6 (Tenn. Ct. App. Sept. 17, 2024). Accordingly, we cannot agree with Mr. Simmons's position that the trial court was required to review all available documents rather than the more limited universe of those to which the trial court was actually cited when determining whether there was a genuine dispute of material fact.

## VI.

We turn next to the epicenter of Mr. Simmons's argument on appeal – his contention that the trial court erred in granting summary judgment because he presented sufficient expert evidence from Dr. Studstill to provide expert proof that he suffered damages caused by Dr. Islam's professionally negligent treatment. This argument is interwoven and advanced by Mr. Simmons in his argumentation as to multiple issues in his briefing on appeal including, among others, that "[t]he Trial Court erred because Causation was established by Dr. Sherri Studstill" and that "[t]he Trial Court erred in evoking the Cancelation Rule."

---

[2] *See*, *e.g.*, *In re Est. of Epley*, No. M2023-00998-COA-R3-CV, 2024 WL 1232201, at \*2 (Tenn. Ct. App. Mar. 22, 2024) (quoting *Cartwright v. Jackson Cap. Partners, Ltd. P'ship*, 478 S.W.3d 596, 616 (Tenn. Ct. App. 2015)); *Boren v. Hill Boren PC*, No. W2021-00478-COA-R3-CV, 2023 WL 3375623, at \*5 (Tenn. Ct. App. May 11, 2023), *perm. app. denied* (Tenn. Oct. 13, 2023); *Harris v. McMichael*, No. E2020-00817-COA-R3-CV, 2021 WL 5274050, at \*6 (Tenn. Ct. App. Nov. 12, 2021).

Turning to the appropriate standard for granting summary judgment, under Tennessee Rule of Civil Procedure 56.04, a court may grant a party summary judgment on a claim when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review an order granting summary judgment de novo, with no presumption of correctness. *Cotten v. Wilson*, 576 S.W.3d 626, 637 (Tenn. 2019). A party seeking summary judgment who does not bear the burden of proof at trial "may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015).

The trial court granted summary judgment on Mr. Simmons's claim under the Tennessee Health Care Liability Act (HCLA), which is codified at Tennessee Code Annotated section 29-26-101 et seq. To prevail in an HCLA action, a plaintiff must prove:

> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
>
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
>
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn. Code Ann. § 29-26-115(a); *see also Cox v. M.A. Primary and Urgent Care Clinic*, 313 S.W.3d 240, 259 (Tenn. 2010) (referring to the elements as "(1) the applicable standard of care; and (2) a breach of the applicable standard of care that (3) proximately caused (4) injuries to the plaintiff"). The Tennessee Supreme Court has held that "elements of a medical malpractice claim generally must be established through competent expert testimony." *Id*. (citing *Moon v. St. Thomas Hosp.*, 983 S.W.2d 225, 229–30 (Tenn. 1998)).

In assessing the expert testimony cited by parties, the trial court focused on the evidence relating to the issue of whether "[a]s a proximate result of the defendant's negligent act or omission, [Mr. Simmons] suffered injuries which would not otherwise have occurred." *See* Tenn. Code Ann. § 29-26-115(a)(3). The trial court found that Dr. Studstill—Mr. Simmon's expert witness—presented contradictory testimony on this element, stating in her initial affidavit that Mr. Simmons suffered injuries as a result of Dr.

- 11 -

Islam's negligence but then later in her deposition indicating that damages were only "possible" based on Mr. Simmons's allegations and that she "didn't go into damages" in her overall analysis or make any determination that Mr. Simmons had suffered any actual damages. Facing the contradictory statements in Dr. Studstill's affidavit versus her deposition, the trial court applied the "cancellation rule," determining her testimony as to damages constituted no evidence, a nullity. Accordingly, given the absence of any other expert witness for Mr. Simmons, the trial court concluded that Mr. Simmons failed to meet his burden at the summary judgment stage of presenting evidence to support each element of his HCLA claim through competent expert testimony.

Addressing the cancelation rule, the Tennessee Supreme Court has indicated that "[w]hen a witness makes contradictory statements about a single fact, those statements cancel each other out and are considered to be 'no evidence' of that fact. . . . The statements only cancel each other out, however, if the contradiction is unexplained and 'neither statement can be corroborated by other competent evidence.'" *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 895 (Tenn. 2019) (citations omitted). "When the cancellation rule is invoked at the summary judgment stage to challenge evidence opposing the motion, the courts must view the challenged evidence in the light most favorable to the opponent of the motion." *Id.* (quoting *Church v. Perales*, 39 S.W.3d 149, 170 (Tenn. Ct. App. 2000)).

In *Ayers by Ayers v. Rutherford Hospital., Inc.*, which is a case like the present one involving an intersection between Tenn. Code Ann. § 29-26-115 and the cancelation rule, this court confronted a circumstance in which the expert's affidavit and deposition testimony were contradictory as to a required showing by the plaintiff. 689 S.W.2d 155, 161-62 (Tenn. Ct. App. 1984). In *Ayers by Ayers*, the plaintiff's retained medical expert indicated in his affidavit that he had practiced medicine in a contiguous state, Virginia, in the year prior to the alleged injury. *Id.* However, in his deposition, the medical expert indicated that he had practiced medicine not in Virginia but instead in Washington, D.C., which is not contiguous to the State of Tennessee. *Id.* Applying the cancelation rule, the trial court concluded that the plaintiff had not presented any evidence that the expert had practiced in a contiguous state during the relevant period. *Id.* at 162. This court affirmed the trial court's application of the cancelation rule, concluding "there is no testimony in the record as to the location of [the retained expert's] practice in the year preceding the date of the alleged injury." *Id.*

Tennessee courts are far from alone in employing such an approach. For example, the Wisconsin Supreme Court concluded that summary judgment was properly granted by the trial court where the expert's affidavit and deposition "directly contradicted" each other "without adequate explanation." *Yahnke v. Carson*, 613 N.W.2d 102, 109 (Wis. 2000). Similarly, the Ohio Supreme Court determined that a nonparty expert's contradictory deposition testimony and affidavit "does not create a genuine issue of material fact to prevent summary judgment unless the expert sufficiently explains the reason for the

contradiction." *Pettiford v. Aggarwal*, 934 N.E.2d 913, 914-15 (Ohio 2010). The Utah Court of Appeals upheld a grant of summary judgment where a neurosurgeon by affidavit indicated that a patient's vision loss was greater because of failure to earlier discover and remove a tumor but where the deposition testimony ran contrary to this conclusion and the neurosurgeon failed to provide an explanation for the contradiction between the affidavit and deposition testimony. *Dierl v. Birkin*, 525 P.3d 127, 135-36 (Utah Ct. App. 2023).

Asked at oral argument whether his argument on appeal was predicated upon a contention that he had presented sufficient expert testimony to establish damages, Mr. Simmons indicated that it was.[3] Mr. Simmons has not argued that the present case is one in which expert testimony is unnecessary. Accordingly, the correctness of the trial court's ruling depends upon whether Mr. Simmons presented expert testimony to establish damages caused by Dr. Islam's alleged professional negligence or whether the trial court correctly determined that under the cancelation rule, Dr. Studstill's affidavit and deposition testimony were contradictory on the issue of damages without explanation and thus a nullity.

Dr. Studstill indicated in her affidavit that as an expert she had concluded that Mr. Simmons had suffered damages as a result of Dr. Islam's negligent professional conduct. In her deposition, however, Dr. Studstill disclaimed any such conclusion. She indicated that damages were a possibility but that she had not made any determination that Mr. Simmons had suffered any actual damages. As to the question of whether Dr. Studstill offered expert testimony as to damages, these statements are contradictory. Critically, no admissible explanation from Dr. Studstill was offered addressing the contradiction. Therefore, we cannot find error in the trial court's analysis in the present case, applying the cancelation rule and rendering Dr. Studstill's testimony on the issue of damages a nullity. Accordingly, we can find no error in the trial court granting the Defendants' motion for summary judgment on this basis.

VII.

---

[3]

Judge: With regard to your argument as to damages, is it fair to say that your contention is that you have sufficient evidence as to damages to move forward based upon the expert testimony? That that is sort of the lynchpin of your argument -- that you have expert testimony that establishes damages in this case and the trial judge erred in concluding that you did not?

Mr. Simmons: That is absolutely correct.

Given the nature of Mr. Simmons's argument on appeal, this court does not reach the question of whether the non-expert testimony could have provided a sufficient basis to establish damages in the present case.

- 13 -

In addition to arguing the trial court erred by awarding summary judgment to the Defendants, Mr. Simmons also challenges the trial court's decision to award discretionary costs. Mr. Simmons argues against the award of discretionary costs on two levels. One, he argues that, pursuant to Tennessee Code Annotated section 20-12-119(c)(5)(D), as a pro se party he is not subject to an adverse award of costs unless he was unreasonable in bringing, or refusing to voluntarily withdraw, the dismissed claim. Mr. Simmons insists that his claim was neither unreasonable nor frivolous. Two, Mr. Simmons challenges multiple specific costs as being unreasonable and thus not properly awarded pursuant to Tennessee Rule of Civil Procedure 54.04.

We find Mr. Simmons's Tennessee Code Annotated section 20-12-119(c)(5)(D) argument unavailing. In general, "the presiding judge shall be authorized, in the presiding judge's discretion, to apportion the cost between the litigants, as in the presiding judge's opinion the equities of the case demand." Tenn. Code Ann. § 20-12-119(b). Tennessee Code Annotated section 20-12-119(c) limits that discretion "where a trial court grants a motion to dismiss pursuant to Rule 12 of the Tennessee Rules of Civil Procedure for failure to state a claim upon which relief may be granted." The award of discretionary costs in the present case did not arise from granting a motion to dismiss pursuant to Rule 12 of the Tennessee Rules of Civil Procedure but rather a summary judgment motion pursuant to Rule 56 of the Tennessee Rules of Civil Procedure. Mr. Simmons in his briefing on appeal fails to develop any argument as to why the language of Tennessee Code Annotated section 20-12-119(c)(5)(D), which by its own terms applies to "[t]his subsection (c)," meaning Rule 12 motions, is applicable to Rule 56 motions. Accordingly, Mr. Simmons's argument that the text of Tennessee Code Annotated section 20-12-119(c)(5)(D) itself renders the award in the present case improper because he eventually became a pro se party in the proceedings before the trial court is unavailing.

Mr. Simmons also takes issue with some of the costs identified and requested by the Defendants, namely the deposition fees and expert costs for three witnesses. He contends these costs were not "reasonable and necessary" as required by Rule 54.04. Concerning Dr. Richie, Mr. Simmons suggests in his brief that his deposition was taken "in bad faith" and, regardless, that Dr. Richie's inability to testify at trial should exempt Mr. Simmons from paying for his deposition as a discretionary cost. Regarding Dr. Studstill, Mr. Simmons asserts that her deposition was overly repetitive, which resulted in the deposition lasting longer than it should have. Based on that premise, Mr. Simmons argues that the cost of her deposition is "unreasonable" within the meaning of Rule 54.04 of Tennessee Rules of Civil Procedure. Finally, Mr. Simmons also asserts that some costs related to Dr. Finestone's deposition, namely "electronic bundling and shipping and handling" are "not a part of Rule 54.04(2)."

Awarding discretionary costs pursuant to Tennessee Rule 54.05 of the Tennessee Rules of Civil Procedure is a discretionary decision for the trial court and one that Tennessee appellate courts review under an abuse of discretion standard. *St. John-Parker*

- 14 -

*v. Parker*, 638 S.W.3d 624, 650-51 (Tenn. Ct. App. 2020); *Boggs v. Rhea*, 459 S.W.3d 539, 547 (Tenn. Ct. App. 2014). "An abuse of discretion occurs when the trial court applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *West v. Schofield*, 460 S.W.3d 113, 120 (Tenn. 2015).

Addressing Mr. Simmons's substantive disagreements with the trial court's award of discretionary costs, the trial court concluded that all the Defendants' requested discretionary costs were "reasonable and necessary." The trial court did not agree with Mr. Simmons that the deposition of Dr. Studstill, for example, took too long, or that the deposition of Dr. Richie was "taken in bad faith." Mr. Simmons's conclusory disagreement with the trial court's conclusions is advanced in his briefing with a dearth of citation to the record or authority suggesting an abuse of discretion. Concerning Dr. Finestone, Mr. Simmons insists that the Defendants asked him to pay for "electronic bundling and shipping and handling." The only line item, however, related to Dr. Finestone included in the Defendants' motion for discretionary costs appears to be a $369.50 item labeled, "Brooks Court Reporting Court Reporter Charge Deposition Finestone." Such an expense clearly falls within the scope of Rule 54.04, which includes, among "[d]iscretionary costs allowable," costs for "reasonable and necessary court reporter expenses for depositions or trials." Based upon the argument presented, we simply cannot conclude that Mr. Simmons has shouldered his burden of demonstrating that the trial court abused its discretion in awarding the Defendants' requested discretionary costs. Accordingly, we find no error.

## VIII.

For the aforementioned reasons, we affirm the judgment of the Circuit Court for Davidson County. Costs of this appeal are taxed to the appellant, Tray Simmons, for which execution may issue if necessary. The case is remanded for further proceedings consistent with this opinion.

s/ Jeffrey Usman
JEFFREY USMAN, JUDGE